IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| DANNY M. BOMAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  05-6069-CV-SJ-ODS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability benefits .  The Commissioner's decision is affirmed.

I.  BACKGROUND

Plaintiff was born in September 1959, has a high school education, and has prior work experience as a sawyer in a sawmill and a nursing home maintenance manager. He last worked in February or March 2003, when the nursing home he worked for closed.  He stopped working for the sawmill in January 2002 because he "wanted to stop working two jobs."  R. at 120.  Plaintiff's application for benefits was filed in April 2003; at the hearing he amended his onset date to February 9, 2003, alleging he was disabled due to a back injury.[1]

In February 2001, Plaintiff was in an automobile accident and was taken to the emergency room with complaints of low back and hip pain.  X-rays revealed no fractures and mild scoliosis, but also degenerative discs at L5-S1, L4-L5, L1-L2 and

---

[1] Plaintiff also has a history of knee problems, including surgery to repair a torn ligament.  However, his knee does not contribute any limitations to Plaintiff's functional abilities.

T12-L1. He was diagnosed as suffering from a back strain and prescribed Darvocet. He returned less than one week later complaining of continued pain, and he was prescribed Percocet and Motrin.

Later that month Plaintiff saw Dr. William Rippe with continued complaints of pain. Plaintiff reported that Percocet helped relieve his pain, and Dr. Rippe prescribed Celebrex, Flexeril and Percocet. Plaintiff also underwent physical therapy in March and April. Near the end of April, he went to the Heartland Pain Clinic, where he complained of pain but again reported that medication had been helpful. Examination revealed tenderness in his sacroiliac joints and epidural steroid injections were administered. In mid-May Plaintiff reported significant improvement. Nonetheless, in June Plaintiff received a third epidural injection and, later, trigger point injections. In mid-July Plaintiff reported his pain had improved significantly and rated it at a two on a scale of one to ten.

On March 31, 2003 – or, two months after Plaintiff's amended onset date and approximately one month after he lost his job because his employer went out of business – Plaintiff went to the Lathrop Family Medical Clinic, reporting pain in his ribs, back and legs after falling earlier in the week. Plaintiff also told the physician, Dr. John Schiro, that he was "unemployed because [his] job closed." R. at 324. Dr. Schiro examined the MRIs and other reports from 2001 and prescribed Percocet. Plaintiff returned a week later and, again relying solely on the previous tests, Dr. Schiro diagnosed Plaintiff as suffering from back pain and ruptured lumbar disc, prescribed Bextra, Norflex, and Lortab, and wrote a note declaring Plaintiff could not work "now or [in the] foreseeable future." R. at 323, 235. The medications were refilled in mid-May. Plaintiff continued seeing Dr. Schiro approximately once a month, each time complaining of back pain and each time obtaining medication. An MRI from October 2003 revealed mild bulging and some spurring in the lower lumbar region, but no herniated discs or lesions. In November 2003, a nerve conduction study revealed normal findings. R. at 368.

In December 2003, Dr. Schiro wrote a letter on Plaintiff's behalf to be used in connection with his application for benefits. He wrote that he had obtained "another

2

MRI, which basically shows degenerative changes, but no disc impingement and no spinal stenosis." R. at 337. Nonetheless, due to Plaintiff's pain, Dr. Schiro believed Plaintiff was not capable of any employment, and that he was not able to maintain gainful employment as of February 9, 2001. Dr. Schiro also prepared a Residual Functional Capacity Form, indicating Plaintiff retained the ability to sit for less than one hour at a time and three hours total, stand and walk for less than one hour at a time and for one hour total, and needed to lie down four hours per day. R. at 339. Plaintiff continued seeing Dr. Schiro through at least April 2004. None of Dr. Schiro's notes from these visits reflect any limitations on Plaintiff's functioning or any condition as serious as he described in his December 2003 letter.

      Plaintiff testified he has pain in his lower back that shoots down into both legs. R. at 33. He also has shooting pain between his shoulders, a result of what he described as three shattered disks in his neck. R. at 34. He describes his daily activities as watching television in bed, where he stays for six to seven hours a day. R. at 35. He also sits watching television, and will wash dishes (a task that takes three to four hours). R. at 36. Nonetheless, he lacks the ability to sit for an extended period of time and must lie down frequently, and the heaviest object he can lift is a glass of milk. R. at 37. At the time of the hearing, he was taking OxyContin, Darvocet and Vioxx. R. at 39-40.

      The ALJ elicited testimony from a Vocational Expert ("VE"), who was first asked to assume a person of Plaintiff's age, education and experience who could lift twenty-five pounds occasionally and ten pounds frequently, sit for six hours, stand and walk for six hours, who could only occasionally stoop, kneel or crouch but could never balance at unprotected heights. The VE testified such a person could perform the work of a head sawyer as that job is usually performed in the national economy, but could not perform it in the manner Plaintiff performed his job because Plaintiff was called upon to lift more weight than is typically associated with the job. The second hypothetical included a requirement that the person lie down for four hours per day, and this disqualified the individual from performing any work.

3

The ALJ rejected Dr. Schiro's opinions for a multitude of reasons, including: (1) the lack of supportive medical findings, laboratory results or other tests, (2) they were inconsistent with the reports from 2001 that they purportedly relied upon, (3) they were inconsistent with the MRI results from 2003, (4) they were inconsistent with the evidence in the record as a whole, and (5) Dr. Schiro's opinions about Plaintiff's ability to work were not medical opinions to which deference was owed. The ALJ also accorded little weight to questionnaires prepared by some of Plaintiff's neighbors and friends because they were inconsistent with the record as whole. R. at 21. He also discounted Plaintiff's credibility based on inconsistencies between his testimony and his statements to doctors, the medical evidence, the functional limitations (or lack thereof) deemed medically necessary or appropriate, the fact that he stopped working because his employer went out of business and not due to an inability to perform his duties, and his testimony that he relied heavily on a cane to walk but was observed to walk without a cane and without difficulty by one of the consulting physicians. The ALJ found Plaintiff's residual functional capacity to be the same as that described in his first hypothetical question to the VE and concluded he could perform work in the national economy.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

4

accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff first contends the ALJ failed to consider the functional demands of his prior work. To the contrary, the VE explained how the typical duties of a head sawyer differed from Plaintiff's duties when he held that position, and the ALJ's written decision specifies Plaintiff retains the residual functional capacity to perform that job "as it is generally performed in the national economy." R. at 24.

Plaintiff next argues the ALJ erred in discounting Dr. Schiro's opinions. Generally speaking, a treating physician's medical opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). The record provides ample justification for the ALJ's decision not to defer to Dr. Schiro's opinions. His opinions were initially based solely on medical records from 2001, but those records not only failed to document a disabling condition, but Plaintiff was able to work following the February 2001 auto accident. Consequently, those records could not substantiate a disability effective in March 2003. Dr. Schiro did not document the results of any corroborating tests, and the tests that were eventually performed failed to substantiate a serious medical condition. The text of Dr. Schiro's records, particularly his letter offered in support of Plaintiff's application, demonstrates Dr. Schiro relied on Plaintiff's reports of pain and associated limitations and Dr. Schiro found those reports to be credible. However, credibility is not a matter of medical expertise, and the ALJ was obligated to conduct his own assessment of Plaintiff's credibility. Similarly, Dr. Schiro's opinion about Plaintiff's ability to work is not a medical opinion, and the ALJ was not required to defer to it.

Finally, Plaintiff contends the ALJ failed to consider whether he could sustain employment. In substance, however, this is a challenge to the ALJ's credibility finding. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar

5

Case 5:05-cv-06069-ODS   Document 9   Filed 03/15/06   Page 5 of 7

standard for analyzing a claimant's subjective complaints of pain is set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that his subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, Plaintiff's testimony is also contradicted by evidence in the record, including conflicts between his testimony and his reports to doctors, the lack of medical evidence, the relatively mild treatment prescribed, the fact that he was able to work until his employer went out of business, he did not quit working

6

as a sawyer because he could not do the work but rather because he did not want to work two jobs, and the other inconsistencies identified by the ALJ. The Court cannot review Plaintiff's credibility de novo, but rather must affirm if there is substantial evidence in the record as a whole to support the ALJ's findings. Such evidence exists, so the ALJ's decision must stand.

### III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

DATE: March 15, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT